14 So.2d 47

TALBOT v. TOWN OF JONESBORO.

No. 36449.

May 17, 1943.

Edmond E. Talbot, of New Orleans, and Joseph S. Guerriero, of Monroe, for appellant.

H. W. Ayres, of Jonesboro, for appellee.

O'NIELL, Chief Justice.

This is a suit for damages for the value of a hotel building which was destroyed by fire. The plaintiff avers that the fire was caused by sparks from a smokestack at the power house of the light and water plant, owned and operated by the defendant, Town of Jonesboro. The town denied that the fire was caused by sparks from the smokestack, and averred that it originated from some other and unknown cause. The town does not dispute that it would be liable if the fire was caused by sparks emitted from the smokestack. The conclusion which we have reached would make it unnecessary to consider that question if it were an issue in the case.

The district court rejected the plaintiff's demand on the ground that the proof did not sustain the allegation that the fire was caused by sparks from the smokestack. The plaintiff is appealing from the judgment. The only question in the case is the question of fact, whether the fire was caused by sparks from the smokestack or originated from some other cause.

The hotel and power house were on opposite sides of a street, and both faced another street. The distance between the two buildings was approximately 100 feet; but the distance from the smokestack to the place where the fire originated, on the roof of the hotel kitchen, was approximately 130 feet. The hotel was a frame building with a shingle roof, and on the kitchen was a ventilator, which is referred to in the testimony. We mention this because the testimony of the witnesses who claim to have seen the fire on the roof before the alarm was given leaves an inference that what appeared to be fire on the roof came from the ventilator.

Two witnesses testified that they saw the sparks coming out of the smokestack about an hour or an hour and a half before the fire was discovered on the kitchen roof. One of these witnesses testified that she saw the

sparks actually falling on the kitchen roof. There is an intimation in the testimony of these and three other witnesses that on previous occasions sparks from the smokestack fell on the hotel at points nearer to the smokestack than the kitchen was and that on one of these occasions an awning was set on fire. But this testimony is not convincing because of the time which the witnesses say elapsed between the falling of the sparks and the discovery of the fire. The testimony of the three witnesses who were of the opinion that the fire originated on the roof of the kitchen is offset by a preponderance of evidence that the fire originated in the attic of the kitchen. The chief and five other members of the fire department who arrived at the scene before the fire burst through the roof testified that it originated in the attic, and that it was necessary to cut a hole in the roof in order to put the hose into the attic. This testimony was corroborated by three other witnesses who arrived before the fire came through the roof. Besides this testimony, that the fire originated in the attic, there is strong circumstantial evidence in favor of the defendant. The sparks which were emitted from the smokestack were not from a wood fire or coal fire but were composed of soot, or carbon, which had accumulated in the smokestack until it was ignited by the exhaust from the engine. The engine was

a Diesel engine, operated with fuel oil. At certain intervals, of about a month, the accumulation of soot was ignited and caused a mild explosion, followed by the emission of sparks from the smokestack. The evidence shows that such sparks cooled off in a very short time, at a distance approximately 50 feet from the smokestack. The most that can be said for the plaintiff in that respect is that it was possible but extremely improbable that the sparks could have set fire to the kitchen roof. And in that connection the evidence is undisputed that only a mild breeze was blowing at the time of the fire, that the direction of the wind was northeastward, and the direction of the plaintiff's kitchen from the defendant's smokestack was northwestward. Which means that the direction of the wind was at right angles with the direction of the kitchen from the smokestack.

The evidence for the plaintiff, as in most cases depending entirely upon a question of fact, is not easily reconciled with the evidence for the defendant. There is not enough proof, that the fire was caused by sparks from the defendant's smokestack, to warrant a reversal of the judgment.

The judgment is affirmed.

ODOM, J., absent.